UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHIEFTAIN INTERNATIONAL (U.S.),           CIVIL ACTION
INC. ET AL.

VERSUS                                    NO. 03-1346

DENNY OFFSHORE EXPLORATION,               SECTION "N" (2)
INC. ET AL.

**FINDINGS AND RECOMMENDATION**

On September 28, 2007, the presiding district judge entered judgment in favor of plaintiffs, Chieftain International (U.S.), Inc., Hunt Chieftain Development, L.P., and Hunt Oil Company (collectively "Hunt"), based on his finding that defendants Southeast Offshore, Inc. and South Pass Properties, Inc. had breached the subject joint operating agreements by failing to pay plaintiffs' invoices when due. The judgment holds Southeast Offshore and South Pass Properties solidarily liable to plaintiffs in the principal amount of $5,841,950.18, plus contractual interest of $2,050,725.91. The judgment orders that "plaintiffs are contractually entitled to recover their attorney fees, court costs, and other costs incurred in connection with their efforts to collect all unpaid amounts due under the joint operating agreements by Southeast Offshore and South Pass Properties." Record Doc. No. 142, at p. 2. The district judge referred to me for findings

and recommendation the "calculation of the amount of attorney fees, court costs, and other costs to be awarded pursuant hereto." Id. at p. 3.

On November 19, 2007, plaintiffs filed their Motion to Set Attorney Fees, Court Costs and Other Costs and noticed it for hearing without oral argument on December 12, 2007. Record Doc. No. 150. I granted Southeast Offshore's unopposed motion to continue the hearing until January 16, 2008, and re-set the hearing on plaintiffs' motion for January 16, 2008 without oral argument. Record Doc. Nos. 155, 156.

On January 9, 2008, Southeast Offshore moved again to continue the hearing date until March 12, 2008 so that defendant could hire an expert witness to testify about the reasonableness of Hunt's requested attorney's fees and costs. Record Doc. No. 159. I denied the motion and ordered Southeast Offshore to file a written opposition to plaintiffs' motion no later than January 22, 2008. Record Doc. No. 161.

Plaintiffs received leave to file a supplemental declaration in support of their motion. Record Doc. Nos. 165, 166. In the supplemental declaration, plaintiffs' lead attorney, Scott A. O'Connor of the law firm Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., explains that the requested amount of attorney's fees and costs reflects a deduction of $14,106.25 from the amount actually charged to plaintiffs and that the deduction accounts for work that was attributable solely to plaintiffs' attempts to obtain a default judgment against another defendant, Denny Offshore Exploration, Inc. In

2

addition, Plaintiffs' Exhibit 1, attached to O'Connor's supplemental declaration, lists the hourly billing rates for the attorneys who worked on the case between January 1, 2003 and March 31, 2005, because those rates were not included in the previously submitted, contemporaneous invoices for that time period.  Record Doc. No. 165-2.

Southeast Offshore filed a timely opposition memorandum.  Record Doc. No. 167.

Having reviewed the written submissions of the parties, the record and the applicable law, and for the following reasons, I find and recommend that plaintiffs should be reimbursed by Southeast Offshore and South Pass Properties in the amount of $503,875 in reasonable attorney's fees and $28,031.15 in court costs and other costs, essentially for the reasons suggested by plaintiffs in their memorandum in support of their motion, and based on the following standards.

The joint operating agreements at issue cover lands and federal leases located on the Outer Continental Shelf adjacent to Louisiana.  Therefore, the Outer Continental Shelf Lands Act ("OCSLA"), 42 U.S.C. § § 1331 et seq., governs the parties' dispute. Under the OCSLA, Louisiana state law applies as surrogate federal law.  <u>Snyder Oil Corp. v. Samedan Oil Corp.</u>, 208 F.3d 521, 522 (5th Cir. 2000); <u>Hufnagel v. Omega Serv. Indus., Inc.</u>, 182 F.3d 340, 349 (5th Cir. 1999).  According to Southeast Offshore's memorandum, which quotes the contracts at issue, both contracts provide that plaintiffs may recover "attorney's fees, court costs, and other costs in connection with the

collection of unpaid amounts." Record Doc. No. 167, at pp. 2-3.[1]  Because plaintiffs' entitlement to attorney's fees, court costs and other costs is a substantive right arising from a contract subject to Louisiana law, the court must apply Louisiana law in determining the quantum of these costs. Cates v. Sears, Roebuck & Co., 928 F.2d 679, 689-90 (5th Cir. 1991).

Hunt seeks $503,875 in attorney's fees and $28,031.15 in costs incurred through the date of judgment.  Under Louisiana law, the "fundamental measure of attorney's fees is reasonableness, considering the factors set forth by Rules of Professional Conduct R. 1.5." Mayeur v. Campbell, 666 So. 2d 366, 370 (La. App. 1st Cir. 1995).  Thus, the factors to be considered in determining a reasonable fee include the following, which are derived from Rule 1.5(a) of the Rules of Professional Conduct:

> (1)  The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly;
> (2)  The likelihood, if apparent to the client, that the acceptance of a particular employment will preclude other employment by the lawyer;
> (3)  The fee customarily charged in the locality for similar legal services;
> (4)  The amount involved and the results obtained;
> (5)  The time limitations imposed by the client or by the circumstances;
> (6)  The nature and length of the professional relationship with the client;
> (7)  The experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8)  Whether the fee is fixed or contingent.

---

[1] The contracts are in the record as exhibits to Southeast Offshore's motion for partial summary judgment. Record Doc. No. 21.

Richardson v. Parish of Jefferson, 727 So. 2d 705, 707 (La. App. 5th Cir. 1999) (citing Rivet v. State Dep't of Transp. & Dev., 680 So. 2d 1154, 1161 (La. 1996)).

These factors are essentially similar to those considered under the federal lodestar analysis, which were originally set forth in Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714 (5th Cir. 1974), overruled on other grounds by Blanchard v. Bergeson, 489 U.S. 87, 90 (1989).[2] In that analysis, the lodestar is first calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311, 319-20 (5th Cir. 1993)). The Johnson factors are taken into account after the court has determined the lodestar amount.

The parties in the instant case suggest that the court should apply the lodestar method. Because the fundamental requirement of reasonableness and the factors used under Louisiana law are substantially similar to the federal lodestar method, I will use the lodestar analysis to determine a reasonable amount of attorney's fees. However, the

---

[2] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. Id. at 717-19.

5

United States Supreme Court has stated that three of the Johnson factors, i.e., the complexity of the issues, the results obtained and the preclusion of other employment, are fully reflected and subsumed in the lodestar amount. Id. (citing Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 565 (1986)). The Supreme Court has also "barred any use of the sixth factor," i.e., whether the fee is fixed or contingent. Walker v. United States Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington, 505 U.S. at 567).

The lodestar "is presumptively reasonable and should be modified only in exceptional cases." Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (citing City of Burlington, 505 U.S. at 562); accord Heidtman, 171 F.3d at 1043. Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Wegner v. Standard Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir. 1995) (hereinafter "LP&L").

The attorneys for whom Hunt seeks fees include its attorneys of record, O'Connor, Ferdinand Laudumiey, IV, Jamie Scott Manuel and Nina Wessel English. Other attorneys who worked on the case at times during its more than four years in litigation

were David J. Messina, A. Blandino, Brandon A. Brown, Sara E. Mouledoux, J. Clifford Rogillio, Joseph C. Giglio, III, Aimee Williams Hebert, C. Peck Hayne, Jr., A. Degeyter, Karen J. Ortego, Stephanie Chiasson Toups and Weston W. Sharples.  Record Doc. No. 150, Plaintiffs' Exh. A.  Hunt also seeks fees for the work of legal assistants.

The requested hourly rates for the attorneys and paralegals are the rates that were actually charged to Hunt, which are reflected on Plaintiffs' Exhibit A attached to its original motion, Record Doc. No. 150, and on Plaintiffs' Exhibit 1 attached to O'Connor's supplemental declaration.  Record Doc. No. 166.  Over the course of the litigation, the hourly rates increased for some of the attorneys who worked on the case.  The billed rates are as follows:

| Attorney Name | Years of Experience[3] | Hourly Rate (Dates)[4] |
|---|---|---|
| O'Connor | 18 | 200 (1/01/03), 215 (10/1/03), 235 (4/29/05), 250 (4/1/06), 260 (8/25/06), 275 (11/17/06) |
| Laudumiey | 11 | 175 (10/1/03), 190 (10/1/04), 200 (11/17/05), 220 (11/17/06) |
| Messina | 20 | 215 (10/1/03), 225 (10/1/04), 250 (11/17/05), 300 (4/1/06) |
| Manuel | 6 | 115 (1/1/03), 125 (10/1/03), 140 (10/1/04) |

---

[3]This column lists the number of years that the attorney has been admitted to the bar through 2007 for those attorneys who are profiled on Gordon Arata's current website.  Manuel, Blandino and Degeyter are not on that website.  However, the record reflects that Manuel left Gordon Arata in June 2007.  Manuel's resume is now posted on the website of Mayhall & Blaize, LLC, in Baton Rouge.

[4]The dates in this column reflect either the effective date of the hourly rate for the time period January 1, 2003 through March 31, 2005, as stated in Plaintiffs' Exhibit 1; or the date of the invoice on which the attorney first charged at the listed hourly rate, for invoices dated after March 31, 2005.

| Attorney | Hours | Rate (Date) |
|---|---|---|
| Giglio | 6 | unknown[5] |
| Hebert | 9 | unknown |
| Blandino | unknown | 135 (10/1/04) |
| Brown | 9 | 160 (8/22/05) |
| Mouledoux | 4 | 125 (10/31/05) |
| Rogillio | 28 | 200 (1/31/06) |
| English | 6 | 150 (8/25/06), 175 (11/17/06) |
| Hayne | 20 | 260 (9/27/06), 275 (11/17/06) |
| Degeyter | unknown | 150 (10/30/06) |
| Ortego | 1 | 125 (10/30/06) |
| Toups | 1 | 135 (7/26/07) |
| Sharples | ‹ 1 | 135 (10/15/07) |
| Paralegals |  | 75 |

Although Hunt has not provided any independent evidence concerning the qualifications, experience, skill or customary hourly rates of any its attorneys, the billing statements submitted by these lawyers to their client in the ordinary course of business, which have now been submitted to the court, coupled with my familiarity with these attorneys based upon their appearances before me, is evidence adequate to sustain their initial burden. This evidence establishes that the hourly rates listed above were charged to Hunt by the attorneys who worked on this case and the related bankruptcy proceedings

---

[5] Giglio and Hebert each worked on the case between January 1, 2003 and March 31, 2005 during the period when the Gordon Arata invoices did not reflect each attorney's hourly rate, but they are not listed on Plaintiffs' Exhibit 1, which provides the missing hourly rates for the other attorneys who worked during that time period. Giglio worked on the case for less than 14 hours, reflected on the invoice dated September 16, 2003. Hebert contributed more significant time on invoices dated between October 14, 2003 and August 31, 2004. I assume that the firm billed for their time at hourly rates commensurate with their colleagues who had the same levels of experience and whose rates are known.

filed by Southeast Offshore and South Pass Properties on September 17, 2004, in which Hunt continued to pursue its debt collection efforts until the instant litigation resumed on August 3, 2006. Record Doc. No. 77.

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested. LP&L, 50 F.3d at 328. Southeast Offshore does not contest the requested hourly rates. Based on the memoranda and attached exhibits, my experience in this court in reviewing and evaluating numerous requests for awards of attorney's fees, my personal knowledge of the qualifications and skills of the attorneys involved and my knowledge of attorneys' fee awards in this district, I find that the requested hourly rates for the attorneys are consistent with market rates in the New Orleans legal market for attorneys with the skill and experience of these particular attorneys working on this type of case, with three minor exceptions. I will reduce the hourly rates for the work done by Hayne from $260/275 to $215 and for the work done by Toups and Sharples from $135 to $125. I also find that the requested hourly rates for the paralegals are consistent with market rates in the New Orleans legal market for paralegals in litigation of this type. With these reductions, I find that the requested rates for these attorneys and paralegals are thoroughly reasonable.

Next, I must determine the reasonable number of hours that plaintiffs' counsel expended on the litigation. The hours expended by the subject attorneys in this case are amply documented in detail in Plaintiffs' Exhibit A attached to Hunt's original motion.

As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded. Watkins, 7 F.3d at 457. Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. Green v. Administrators of Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002) (citing Walker, 99 F.3d at 769); accord Hensley, 461 U.S. at 433-34. The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." Walker, 99 F.3d at 770.

Southeast Offshore argues that plaintiffs did not exercise adequate billing judgment because they deducted only $14,106.25 related to obtaining a default judgment against Denny Offshore, failed to submit any breakdown of that deduction so that it might be examined for adequacy of billing judgment and failed to deduct any other fees. Hunt requested entry of default against Denny Offshore on August 15, 2003, which the Clerk of Court entered on August 18, 2003. Record Doc. No. 11. The invoiced time entries before August 18, 2003 clearly reflect the work that was done in pursuit of entry of default. Plaintiffs' Exh. A, invoice dated September 6, 2003. O'Connor states in his

supplemental declaration that all work done after the entry of default was related solely to Hunt's attempt to collect the amounts owed by Southeast Offshore and South Pass Properties, until October 2004 when Hunt undertook to confirm its default judgment against Denny Offshore. Record Doc. No. 165. The invoices reveal that Hunt's attorneys began preparing to seek entry of a default judgment against Denny Offshore on September 17, 2004. Plaintiffs' Exh. A, invoice dated October 27, 2004. O'Connor states that Hunt's deduction of $14,106.25 in fees and costs provides a greater credit than was actually billed for the work performed solely to obtain the default judgment. Record Doc. No. 165. I accept O'Connor's statements, which are well supported by the invoices, as accurate, and I find that Hunt adequately exercised billing judgment for all of its fees.

Furthermore, Southeast Offshore contends that plaintiffs should not recover "any fees for work expended that was related to the bankruptcy cases of Southeast Offshore and South Pass Properties, Inc. but was not directly related to the collection of the amounts Plaintiffs are owed." Record Doc. No. 167, at p. 7. In this category, Southeast Offshore argues specifically that the court should disallow "all fees and costs for work associated with the evaluation of a claim against Clarence Day, personally, including all

11

costs related to the 2004 exam[6] conducted of Mr. Day for the sole purpose of obtaining information to use in possible litigation against him." Id. at pp. 7-8.

In a similar vein, Southeast Offshore asks the court to deny fees for all work performed by plaintiffs' counsel "in their attempts to have attorney David Messina employed as a professional in Southeast Offshore, Inc.'s bankruptcy case," in which, had plaintiffs been successful, "he would have been involved as a paid professional and not as an attorney for a creditor." Id. at p. 8.

Southeast Offshore also argues that the bankruptcy court must determine what post-petition fees and expenses may be awarded to plaintiffs for work performed after Southeast Offshore filed its Chapter 7 bankruptcy case.

Southeast Offshore has not provided the court with any legal authority to support its arguments or with any references to specific entries in the more than 300 pages of invoices that Hunt submitted. Southeast Offshore therefore has failed to carry its burden of showing that a reduction in fees is warranted on any of the grounds it cites.

I find that the amounts sought are the fees and costs actually incurred by Hunt in connection with its efforts to collect all unpaid amounts due by Southeast Offshore and

---

[6]Rule 2004(b) of the Federal Rules of Bankruptcy Procedure provides: "The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

12

South Pass Properties under the contracts. The hours expended by Hunt's counsel were reasonable, non-duplicative and sufficiently documented, all as reflected in the detailed billing statements attached as Plaintiffs' Exhibit A to Record Doc. No. 150.

Thus, both the hourly rates and the time expended by the attorneys and paralegals, as reflected in the billing statement exhibits, are reasonable and awardable, with the three minor reductions in the reasonable hourly rates for Hayne, Toups and Sharples noted above. Those reductions in hourly rates yield the following reduction in the amount of reasonable attorney's fees.

As reflected on Gordon Arata's invoices dated September 27, October 30 and November 17, 2006 and October 15, 2007, Hayne worked 2.25 hours at $260 per hour and 1.5 hours at $275 per hour for a total requested fee of $997.50. Billing his total of 3.75 hours at $215 per hour yields a reasonable fee of $806.25, for a reduction of $191.25. Toups billed 3 hours on the July 26, 2007 invoice and Sharples billed 12.50 hours on the October 15, 2007 invoice, both at $135 per hour, for a total combined fee of $2,092.50. Billing their combined total of 15.50 hours at $125 yields a reasonable fee of $1,937.50, for a reduction of $155. After deducting $191.25 for Hayne and $155 for Toups and Sharples from the requested $503,875, I find that the lodestar amount in this case is $503,528.75.

After eliminating from consideration the Johnson factors that are subsumed in the lodestar or prohibited, only four factors remain for an adjustment analysis: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client and awards in similar cases. The customary fee appears to be the fee reflected in the billing statements and has already been evaluated in establishing a reasonable hourly rate. The nature and length of the professional relationship between Hunt and its attorneys is unknown but is of minimal importance in this overall context. The case was not undesirable. Awards in other cases do not appear to be relevant because the award here is based on specific contractual language. Accordingly, I find that the lodestar amount of attorney's fees sought by Hunt is reasonable and needs no adjustment.

As to plaintiffs' costs, my research has located no case that sets or discusses a standard under Louisiana law for determining the amount of a contractually based award of "court costs, and other costs incurred," beyond the simple statement that "[t]he contract provides that the purchaser would be liable for attorney's fees and costs. We interpret that provision to include all fees and costs required to litigate any controversy arising out of the contract." Rabin v. Blazas, 537 So. 2d 221, 225 (La. App. 4th Cir. 1988).

Although Southeast Offshore points out some minor examples of allegedly unnecessary or excessive costs (without, for the most part, identifying specific instances), it does not seriously contest either the reasonableness or the necessity of the costs and expert's fees sought by Hunt. Applying the same reasonableness standard discussed above, I find that the reimbursable costs reflected in the billing statements of counsel, together with the fees paid to an expert in the amount of $4,500, Record Doc. No. 150, Plaintiffs' Exh. A, are reasonable and were necessarily incurred in connection with Hunt's collection from these defendants of unpaid amounts under the contracts.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that defendants Southeast Offshore, Inc. and South Pass Properties, Inc. pay plaintiffs $503,528.75 in reasonable attorney's fees and $28,031.15 in costs, all as reflected in the billing statements of counsel and the other exhibits filed herein.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   25th   day of January, 2008.

*[signature]*
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE